NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

VINCENT NATHANIEL
ROUNDTREE,

                **Plaintiff,**

v.

COMMISSIONER OF SOCIAL
SECURITY,

                **Defendant.**

Case No. 6:17-cv-566-Orl-41KRS

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

    This cause came on for consideration without oral argument on the Complaint filed by Plaintiff, Vincent Nathaniel Roundtree, seeking review of the final decision of the Commissioner of Social Security denying his claim for social security benefits, Doc. No. 1, the answer and certified copy of the record before the Social Security Administration ("SSA"), Doc. Nos. 8, 10, and the parties' Joint Memorandum,[1] Doc. No. 15.

---

[1] I required counsel for the parties to submit a single, Joint Memorandum with an agreed statement of the pertinent facts in the record. Doc. No. 11. Counsel for Plaintiff was ordered to identify and frame, in a neutral fashion, each of the disputed issues raised as grounds for reversal and/or remand, and counsel for the Commissioner was required to respond to each of those issues in the format set forth in the Scheduling Order. *Id.* at 4.

NOT FOR PUBLICATION

## PROCEDURAL HISTORY.

In 2013, Roundtree filed an application for benefits under the Supplemental Security Income for the Aged, Blind and Disabled Program ("SSI"), 42 U.S.C. § 1381, *et seq*. He alleged that he became disabled on September 28, 2012. R. 187.

After his application was denied originally and on reconsideration, Roundtree asked for a hearing before an Administrative Law Judge ("ALJ"). R. 134. An ALJ held a hearing on September 2, 2015. Roundtree, accompanied by an attorney, and a vocational expert ("VE") testified at the hearing. R. 36-68.

After considering the hearing testimony and the evidence in the record, the ALJ found that Roundtree had not engaged in substantial gainful activity since May 13, 2013, the application date. R. 23. The ALJ found that Roundtree had the following severe impairments: affective disorder; personality disorder; obesity; diabetes mellitus; congenital pes planus (flat feet); spine disorder-lumbar; and, degenerative joint disease of the ankles and feet. *Id.* The ALJ concluded that Roundtree had no restrictions in activities of daily living and moderate difficulties in social functioning and in concentration, persistence or pace. R. 24. These impairments did not meet or equal a listed impairment. R. 23.

The ALJ found that Roundtree had the residual functional capacity ("RFC") to perform light work, as follows:

> [H]e can sit up to 7 hours in a workday, though only up to 1 hour at the time. He can stand and walk 6 hours per day, though only up to 45 minutes at the time. He can lift and carry 15 pounds occasionally and 10 pounds frequently. He can occasionally bend, stoop, kneel, climb ramps/stairs, and reach above shoulder level. He should not crouch, crawl, climb ladders, ropes, or scaffolding. He is limited to simple, unskilled, repetitive tasks. He should work primarily alone with little interaction with coworkers or the general public.

NOT FOR PUBLICATION

R. 25. In reaching this conclusion, the ALJ gave partial weight to the functional capacity assessments prepared by reviewing physicians. R. 29. While the ALJ discussed some of the findings made by John Ortolani, M.D., a treating physician, he did not discuss all of Dr. Ortolani's opinions and he did not state the weight he gave to those opinions. R. 27. The ALJ also concluded that Roundtree's reports about his functional limitations were not entirely credible. R. 26.

After considering the testimony of the VE, the ALJ concluded that Roundtree could return to his past relevant work as a laundry separator. Therefore, he concluded that Roundtree was not disabled. R. 30.

Roundtree sought review of the ALJ's decision by the Appeals Council. R. 15. On February 17, 2017, the Appeals Council found no reason to review the ALJ's decision. R. 1-3.

Roundtree now seeks review of the final decision of the Commissioner by this Court.

## JURISDICTION AND STANDARD OF REVIEW.

Roundtree having exhausted his administrative remedies, the Court has jurisdiction to review the decision of the Commissioner pursuant to 42 U.S.C. § 405(g), as adopted by reference in 42 U.S.C. § 1383(c)(3). A court's review of a final decision by the SSA is limited to determining whether the ALJ's factual findings are supported by substantial evidence, *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam), and whether the ALJ applied the correct legal standards, *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).

## SUMMARY OF THE FACTS.

After a thorough review of the record, I find that the facts are generally adequately stated in the parties' Joint Memorandum, which statement of facts I incorporate by reference. Accordingly,

NOT FOR PUBLICATION

I will only summarize facts pertinent to the issues raised to protect Roundtree's privacy to the extent possible.[2]

Roundtree was born in 1959. On the date of the ALJ's hearing, he was 5'11" tall and he weighed about 300 pounds. He completed high school. R. 40. He served in the military from 1977 to 1985. R. 44. On May 20, 2011, he received a Bachelor of Biblical Studies from The Foundation Institute for Biblical Studies. R. 223.

In 2006, Roundtree worked as a laundry separator, which the VE testified was a light, unskilled job. R. 42, 58. This job required that Roundtree open bags of laundry with a razor and flip the bag over so the laundry would fall out onto a conveyer belt. No lifting was required. R. 42-43, 61-62. He could perform the work standing or seated but he could not use a cane. R. 63.

Roundtree testified that he had insulin dependent diabetes, hypertension, and flat feet with bone spurs on the bottom on his feet. R. 45-46. He also had spinal injuries from a 2013 motor vehicle accident resulting in pain. R. 47. He had radiating pain with tingling in his legs. R. 47-48. He also had a fractured right foot and nerve damage in his right hand due to diabetic neuropathy. R. 56.

He estimated that he could walk 4 or 5 minutes with a limp. R. 47. He could sit for 10 minutes before needing to change positions. He could lift and carry 10 to 15 pounds. R. 52.

Medical records reflect that Roundtree was treated at the VA. The VA records include diagnoses of diabetes mellitus type II, a foot fracture, pain in the ankle and foot, obesity and hypertension. R. 334. In June 2013, a physical therapist found that Roundtree's range of motion

---

[2] Because Roundtree does not challenge the ALJ's treatment of his mental impairments, I will not include evidence regarding those impairments in this summary.

4

in his upper extremities was within functional limits ("WFL"). He instructed Roundtree in the use of an adjustable cane. R. 331-32. In August 2013, Richard S. Bornstein, D.P.M., determined that Roundtree had severe Pes Planus (flattening of the arches in both feet) with medial displacement of the ankles during standing and with walking. Vibratory sensation was decreased in both feet. Roundtree also had insulin dependent diabetes. R. 442.

On August 24, 2013, Carlos Suarez, M.D., prepared a functional capacity assessment after review of the medical records. He opined that Roundtree could lift and/or carry up to 20 pounds occasionally and 10 pounds frequently. He could sit and stand/walk each about 6 hours in an 8-hour workday. He could occasionally climb ramps/stairs, balance, stoop (bend), kneel, crouch and crawl and never climb ladders/ropes/scaffolds. He should avoid concentrated exposure to extreme cold and hazards due to back problems and arthritis. Dr. Suarez observed that the medical records showed that Roundtree was obese with a BMI of 44.3. R. 108-10.

On December 7, 2013, Roundtree was taken to an emergency department following a motor vehicle accident. He complained of neck pain and tingling in his right arm. R. 705. A CT scan of the cervical spine showed degenerative changes with no acute fracture. R. 707, 709-10.

Dr. Ortolani began treating Roundtree on December 10, 2013. Roundtree complained of neck pain radiating down his right arm and mid and low back pain radiating down the right leg. Roundtree was 71 inches tall and he weighed 300 pounds, with a BMI of 41.84. Upon examination, Dr. Ortolani observed paracervical muscle tenderness and spasms with a positive Phalen's sign on the right.[3] He also observed parathoracic muscle tenderness and spasms,

---

[3] A Phalen's sign is a test for carpal tunnel syndrome. *Wheelock v. Comm'r of Soc. Sec.*, No. 6:16-cv-860-Orl-37KRS, 2017 WL 3267800, at * 3 (M.D. Fla. June 28, 2017) (report and recommendation).

moderately severe, and paralumbar muscle tenderness and spasms. There was also pain over the sacroiliac joint and sciatic nerve. R. 496.

On January 2, 2014, an MRI of the lumbar spine revealed a small annular tear at L4-5, a mild disc bulge at L3-4, and congenital narrowing of the canal at L5-S1. R. 495.

On January 9, 2014, Roundtree returned to Dr. Ortolani. Upon examination, Dr. Ortolani observed spasms in the neck and back with restriction in range of motion, pain over the cervical roots on the right, a positive Phalen's sign on the right with pain, pain in the thoracic spine, sacroiliac joint and sciatic nerve and decreased sensation to pinprick at L4-5. R. 493. His assessments included thoracic/lumbar radiculopathy and cervical radiculopathy. He prescribed narcotic pain medication and ordered additional MRIs. R. 493-94. The MRI of the cervical spine showed a small midline bulge at C2-3, likely herniated discs at C3-4 and C4-5, with a protruding disc at C4-5 coming into contact with the spinal cord. Additionally, there was a disc bulge at C5-6 and a more extensive disc bulge at C6-7 consistent with an annular tear. R. 484.

On March 6, 2014, Dr. Ortolani again examined Roundtree, who continued to complain of pain. Upon examination, Dr. Ortolani observed spasms in the neck and back with restriction of motion, spasms and pain in the upper trapezius muscles on the right, pain over the cervical roots on the right, a positive Phalen's sign on the right with pain over the ulnar groove, and spine and sacroiliac pain radiating down the right leg to the toes. Dr. Ortolani ordered an MRI of the thoracic spine and an EMG/NCV of the upper and lower extremities to evaluate for nerve damage. He continued Roundtree on narcotic medication. R. 469-70.

The EMG report of the right lower extremity revealed diffuse diabetic peripheral neuropathy with underlying lumbar radiculopathy L5-S1 on the right with acute changes. R. 466. The EMG

report of the right upper extremity revealed bilateral carpal tunnel syndrome of moderate severity, bilateral ulnar neuropathy of moderate severity, greater on the right, and cervical radiculopathy C5-6 on the right with acute changes. R. 462. The MRI of the thoracic spine revealed a disc bulge indenting the anterior thecal sac at T6-7, T7-8 and disc herniation at T9-10 indenting the right thecal sac with cord deformity. R. 461.

On May 5, 2014, Roundtree returned to Dr. Ortolani's office. Upon examination, Dr. Ortolani continued to observe spasms and pain in the neck, back and trapezius muscles, with restriction of motion in the neck and back. He also observed pain in the cervical roots on the right radiating down the right arm. A Phalen's sign was positive in both arms. There was also pain in the areas of the spine, right sacroiliac joint and sciatic nerve, and radicular pain down the right leg to the toes. His diagnoses were thoracic/lumbar radiculopathy; cervical radiculopathy; carpal tunnel syndrome; lesion of the ulnar nerve; and peripheral neuropathy. R. 457-58. Dr. Ortolani opined that Roundtree had a 3% impairment related to disc injuries in the cervical spine; a 5% impairment related to the herniated disc at T9-10; a 7% impairment related to bilateral carpal tunnel/ulnar neuropathy and right C5-6 cervical radiculopathy; and, a 5% impairment related to right lumbar radiculopathy L5-S1; giving him a 20% impairment of the body as a whole. R. 458.

On July 1, 2014, Roundtree continued to complain of neck and back pain radiating down his right arm and leg. Upon examination, Dr. Ortolani noted increased spasms in the neck and back with restriction of motion, increased spasms in the trapezius muscle; and, increased pain overall. He continued to treat Roundtree with narcotic pain medication. R. 454-55.

A VA record from May 2015 reflects after examination that Roundtree had a partially insensate left foot. R. 628. An Emergency Department record from May 24, 2015 includes a diagnosis of morbid obesity. R. 698.

Dr. Ortolani examined Roundtree again in June and July 2015. R. 596-97, 599-600. Roundtree continued to complain of pain in the neck and back radiating down his right arm and right leg. Physical therapy had helped and Hydrocodone was effective. R. 596, 599. Upon examination, Dr. Ortolani observed noticeable spasms in the neck and back with restriction of motion, and pain in the trapezius muscle, over the cervical roots on the right, in C7-T4, T6-10, and L4-S1 and over the right sacroiliac joint and sciatic nerve with radicular pain and swelling down both legs to the feet. A Phalen's sign was positive in both arms with pain over the ulnar groove. R. 597. Dr. Ortolani's diagnoses remained the same as previously with an additional diagnosis of chronic pain syndrome. He refilled narcotic pain medication, demonstrated stretches and exercises, and encouraged use of wrist splints at night. R. 596-97.

During the hearing, the ALJ asked the VE to assume a hypothetical person of Roundtree's education and work experience with Roundtree's RFC as determined by the ALJ. The VE testified that this hypothetical person could perform Roundtree's past relevant work as a laundry separator, as Roundtree performed it. R. 58. In response to additional questions, the VE testified that to perform this job the person would need the ability to perform frequent grasping in both hands. R. 60-61.

NOT FOR PUBLICATION

## ANALYSIS.

In the Joint Memorandum, which I have reviewed, Roundtree raises two interrelated assignments of error. He contends that the ALJ erred by failing to give substantial weight to the opinions of Dr. Ortolani, a treating physician. He argues that this error, along with the ALJ's failure to address functional limitations arising from morbid obesity, undermine the ALJ's finding that he could return to his past relevant work as a laundry separator. These are the only issues I will address.

Dr. Ortolani treated Roundtree following his motor vehicle accident in December 2013 through at least July 2015. Therefore, he is a treating physician whose opinions "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004) (quotation omitted). An ALJ must state with particularity the weight he gives to the opinion of a treating physician and the reasons supporting that decision. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). In this case, the ALJ did not include in his decision all of Dr. Ortolani's opinions, including his permanent impairment ratings, and he did not state what weight he gave to those opinions.

Roundtree contends that the failure to give considerable weight to Dr. Ortolani's opinions was prejudicial because Dr. Ortolani found that Roundtree had impairments in his arms and hands arising from bilateral carpal tunnel syndrome, bilateral ulnar neuropathy, and right cervical radiculopathy. The VE testified that if Roundtree was limited to occasional grasping with one hand, he would not be able to return to his job as a laundry separator.

Counsel for the Commissioner concedes that the ALJ erred by not stating the weight given to Dr. Ortolani's findings but contends that this error was harmless because Dr. Ortolani did not

impose any specific limitation or restriction on Roundtree's use of his arms and hands.  Doc. No. 15, at 15, 18-19.  There is no indication, however, that Dr. Ortolani (or indeed any physician) was asked to render a functional capacity assessment after the objective tests showed that Roundtree suffered from bilateral carpal tunnel/ulnar neuropathy and right C5-6 cervical radiculopathy.  Under these circumstances, counsel for the Commissioner's analysis of the record in an attempt to provide an after-the-fact justification of the ALJ's failure to state the weight given to the opinion of a treating physician is insufficient to permit meaningful review of the ALJ's decision.  *See, e.g., Gatewood v. Comm'r of Soc. Sec.*, No. 6:09-cv-122-Orl-31KRS, 2010 WL 455318, at * 13 (M.D. Fla. Feb. 3, 2010)(citing *Owens v. Heckler*, 748 F.2d 1511, 1514-15 (11th Cir. 1984)(per curiam)).

Roundtree also argues that the ALJ did not address the functional limitations, if any, arising from obesity, which the ALJ found to be a severe impairment.  SSR 02-1p discusses the evaluation of obesity.  It notes,

> Obesity can cause limitation of function.  The functions likely to be limited depend on many factors, including where the excess weight is carried.  An individual may have limitations in any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling.  It may also affect ability to do postural functions, such as climbing, balance, stooping, and crouching.  The ability to manipulate may be affected by the presence of adipose (fatty) tissue in the hands and fingers.  The ability to tolerate extreme heat, humidity, or hazards may also be affected.

*Titles II & XVI: Evaluation of Obesity*, SSR 02-1p, 2002 WL 34686281, at * 6 (S.S.A. Sept. 12, 2002).  SSR 02-1p states that "[a]n assessment should also be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment."  *Id.*  It further requires that, "[a]s with any other impairment, we will explain how we reached our conclusions on whether obesity caused any physical or mental limitations."  *Id.* at * 7.

Counsel for the Commissioner incorrectly argues that the ALJ specifically discussed SSR 02-1p in his decision, Doc. No. 15, at 24. There is no reference to SSR 02-1p in the ALJ's decision. There is also no statement by the ALJ regarding how he considered the impact of obesity on Roundtree's functional capacity or the reasons supporting that statement. When, as here, "the ALJ fails to 'state with at least some measure of clarity the grounds for his decision,' we will decline to affirm 'simply because some rationale might have supported the ALJ's conclusion.'" *Winschel*, 631 F.3d at 1179 (quoting *Owens*, 748 F.2d at 1516).

For these reasons, I recommend that the Court find that reversal of the final decision of the Commissioner and remand for further proceedings to make findings consistent with governing law are warranted.

### RECOMMENDATION.

For the reasons stated above, I **RESPECTFULLY RECOMMEND** that the final decision of the Commissioner be **REVERSED** and that the case be **REMANDED** for further proceedings. I further **RECOMMEND** that the Court direct the Clerk of Court to issue a judgment consistent with its decision on this Report and Recommendation and, thereafter, to close the file.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**Respectfully Recommended** this 20th day of February, 2018.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

NOT FOR PUBLICATION

Copies to:
Presiding District Judge
Courtroom Deputy Clerk
Counsel of Record